# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

WURTZ v BEECHER METROPOLITAN DISTRICT

Docket No. 146157. Argued December 10, 2013 (Calendar No. 9). Decided April 25, 2014.

Richard L. Wurtz brought an action in the Genesee Circuit Court against the Beecher Metropolitan District (a water and sewage district), Jacquelin Corlew, Leo McClain, and Sheila Thorn, alleging a violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., and wrongful termination in violation of public policy. Wurtz had served as the district's administrator from February 1, 2000, until February 1, 2010, pursuant to a contract he drafted earlier while he was the district's attorney. The individual defendants were those members of the district's five-member board who voted not to renew Wurtz's contract. The tension between Wurtz and the board began in May 2008 when he reported an alleged violation of the Open Meetings Act by the individual defendants and continued through November 2009 when he reported to the sheriff's department and the newspaper what he alleged were improprieties in reimbursements to the board for attendance at an out-of-state conference. The board voted to not renew Wurtz's contract, but allowed him to finish his full 10-year term, and he received all his salary and benefits during that term. Defendants moved for summary disposition, arguing that Wurtz had not been fired because his contract expired by its own terms. The court, Judith A. Fullerton, J., dismissed the public-policy claim, holding that the WPA provided Wurtz's exclusive avenue of relief. The court also concluded that Wurtz could not satisfy the WPA's elements because he had worked the entire term of his contract and not been discharged. Wurtz appealed, and the Court of Appeals, WHITBECK, P.J., and JANSEN, J. (K. F. KELLY, J., dissenting), reversed, holding that summary disposition was inappropriate because an employer's failure to renew a contract employee's fixed-term contract satisfied the WPA's requirement that the employee suffer an adverse employment action. 298 Mich App 75 (2012). The Supreme Court granted defendants' application for leave to appeal. 494 Mich 862 (2013).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, MCCORMACK, and VIVIANO, the Supreme Court *held*:

Under MCL 15.362, a plaintiff must demonstrate three elements to establish a prima facie case that the defendant employer violated the WPA: (1) the employee was engaged in a protected activity listed in the WPA, (2) the employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment, and (3) a causal connection existed between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee. By its express language, the WPA applies only to individuals who experience one

or more of the statute's enumerated adverse employment actions with respect to their status as employees. A contract employee seeking a new term of employment should be treated the same as a prospective employee for purposes of the WPA. The WPA has no application in the hiring context. It excludes job applicants and prospective employees from its protections and, therefore, does not apply when an employer declines to renew a contract employee's contract. Absent some express obligation stating otherwise, a contract employee has absolutely no claim to continued employment after his or her contract expires. Wurtz had no recourse under the WPA because he alleged only that his former employer declined to renew his contract, not that the employer took some adverse action against him during his contractual term of employment. Wurtz's claim failed as a matter of law, and summary disposition was not premature because no amount of additional discovery could have shown that Wurtz came within the WPA's protections.

Reversed and remanded.

Justice CAVANAGH concurred in the result.

©2014 State of Michigan

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED APRIL 25, 2014

STATE OF MICHIGAN

SUPREME COURT

RICHARD L. WURTZ,

      Plaintiff-Appellee,

v

No. 146157

BEECHER METROPOLITAN DISTRICT,
JACQUELIN CORLEW, LEO McCLAIN,
and SHEILA THORN

      Defendants-Appellants.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

This case requires the Court to consider the application of Michigan's Whistleblowers' Protection Act (WPA)[1] to a contract employee whose contract is not renewed ostensibly because of the employee's whistleblowing activities. A contract employee whose term of employment has expired without being subject to a specific

---

[1] MCL 15.361 *et seq.*

adverse employment action identified in the WPA and who seeks reengagement for a new term of employment occupies the same legal position as a prospective employee. The WPA, by its express language, only applies to current employees; the statute offers no protection to prospective employees. Because the WPA does not apply when an employer decides not to hire a job applicant, it likewise has no application to a contract employee whom the employer declines to rehire for a new term of employment. The plaintiff in this case has no recourse under the WPA because he alleges only that his former employer declined to renew his contract, not that the employer took some adverse action against him during his contractual term of employment. Accordingly, we reverse the Court of Appeals' contrary decision and remand this case to the circuit court for entry of summary disposition in defendants' favor.

## I. FACTS AND PROCEEDINGS

The Beecher Metropolitan District (the District) manages water and sewage for a portion of Genesee County. The District has five elected board members and also employs a part-time district administrator who manages District operations on a day-to-day basis. The District has 11 full-time employees who do various maintenance and clerical jobs. The District's full-time employees operate under a union contract; only the district administrator historically operates under a separate contract with the District.

Plaintiff Richard Wurtz began his tumultuous tenure as the district administrator on February 1, 2000, and served until February 1, 2010. Before becoming district administrator, Wurtz was the District's attorney. In his capacity as attorney, he drafted the contract that would govern his term as district administrator. The contract provided

2

for a 10-year term beginning on February 1, 2000, and ending on February 1, 2010. The board approved the contract and Wurtz became district administrator.

Tension between Wurtz and the board developed in May 2008 when Wurtz reported an alleged violation of the Open Meetings Act (OMA)[2] to the Genesee County Prosecutor. In a letter dated May 22, 2008, Wurtz informed the prosecutor that board members Sheila Thorn, Leo McClain, and Jacquelin Corlew—the three individual defendants in this case—had met with a labor attorney outside of a public meeting to discuss retaining the attorney. The prosecutor, however, declined to prosecute. Several months later, Wurtz demanded a benefits increase commensurate with those given to the District's unionized employees. He told the board that he was the one who filed the OMA complaint and said that he would treat the board's failure to capitulate as retaliation for his reporting the alleged OMA violations. The board granted Wurtz the increase he desired, with two of the defendant board members voting against his benefits increase and one voting in favor.

In early 2009, Wurtz sent a proposal to the board regarding his contract. Wurtz said he could save the District money by reducing his salary and cutting off all of his benefits except life insurance. But the proposal also would have extended Wurtz's already tumultuous term for an additional $2^1/_2$ years. A motion to accept Wurtz's proposal was defeated by a vote of 3 to 2. Thorn, McClain, and Corlew voted against Wurtz's proposal.

---

[2] MCL 15.261 *et seq.*

3

Relations between Wurtz and the board further deteriorated in the spring of 2009. The board had plans to attend the American Water Works Association conference in San Diego. Wurtz told the board that he had concerns about the cost of the trip and the manner of reimbursement. He noted several recreational items that he thought it would be inappropriate to subsidize with taxpayer funds. Wurtz nonetheless reimbursed the board for the expenses.

Despite having issued the reimbursement checks himself, Wurtz contacted the Genesee County Sheriff's Department and the Flint Journal regarding the board's trip to San Diego. This resulted in the sheriff's department raiding the District's office and public outcry about the board members' actions. Wurtz cooperated with the investigation conducted by the sheriff's department. The board members were criminally charged in connection with the trip, but all were acquitted of wrongdoing or had the charges against them dismissed.

Events came to a head in November 2009, several months before Wurtz's contract was set to expire. At the November 11, 2009 meeting, Wurtz warned the board that he would consider the board's failure to extend his contract to be retaliation for the criminal investigation. The board, however, refused to heed Wurtz's warning and voted 3 to 2 not to renew Wurtz's contract and to begin the search for a new district administrator. The majority once again consisted of Thorn, McClain, and Corlew. Wurtz's attorney wrote a letter to the board informing it that Wurtz intended to file a claim under the WPA. But the board replied that it would not change its mind, citing other, legitimate reasons for deciding not to renew Wurtz's contract. The board explained that the tumultuous relationship between Wurtz and the board members far preceded any alleged

4

whistleblowing activities, and furthermore, that it wished to make the administrator job full-time. Wurtz could not hold the position full-time because of his law practice.

Despite the total breakdown of the working relationship, the board allowed Wurtz to finish out his contract. Wurtz's employment with the District expired on February 1, 2010, by the terms of the contract. One essential and undisputed fact bears emphasis: Wurtz suffered no adverse consequences in the context of his self-drafted 10-year contract. He received all of the salary and benefits to which he was entitled, and he was employed as district administrator for each and every day of the agreed-to term.

After his employment ended, Wurtz brought suit in Genesee Circuit Court against the District and the three board members who voted not to renew his contract, alleging a violation of the WPA and wrongful termination in violation of public policy. Defendants moved for summary disposition, arguing that Wurtz had not been fired because his contract expired by its own terms. Wurtz argued that his employment was terminated and, further, that summary disposition was premature because discovery was incomplete. But the court agreed with defendants. First, the court dismissed the public policy claim, holding that the WPA provided the exclusive avenue of relief to Wurtz. Then the court concluded that Wurtz could not satisfy all of the WPA's elements because he had worked through the entirety of his contract and was not discharged.

Wurtz appealed the circuit court's decision to the Court of Appeals, which reversed in a split opinion.[3] The majority concluded that summary disposition was inappropriate because, in its view, an employer's failure to renew a contract employee's

---

[3] *Wurtz v Beecher Metro Dist*, 298 Mich App 75; 825 NW2d 651 (2012).

5

fixed-term contract satisfied the WPA's requirement that the employee suffer an adverse employment action.[4] The dissent, on the other hand, would have held as a matter of law that Wurtz could not satisfy the WPA's elements based on the nonrenewal of a fixed-term contract.[5] Defendants sought leave to appeal in this Court, which we granted.[6] We asked the parties to address "(1) whether the plaintiff suffered an adverse employment action under the [WPA] when the defendants declined to renew or extend the plaintiff's employment contract, which did not contain a renewal clause beyond the expiration of its ten-year term; and (2) whether there was a fair likelihood that additional discovery would have produced evidence creating a genuine issue of material fact, MCR 2.116(C)(10), if the defendants' motion for summary disposition had not been granted prior to the completion of discovery."[7]

## II. STANDARD OF REVIEW

The interpretation of the WPA presents a statutory question that this Court reviews de novo.[8] The Court also reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10).[9]

---

[4] *Id*. at 88.

[5] *Id.* at 91 (K.F. KELLY, J., dissenting).

[6] *Wurtz v Beecher Metro Dist*, 494 Mich 862 (2013).

[7] *Id*.

[8] *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

[9] *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

## III. ANALYSIS

This case invites the Court to decide whether the WPA applies when an employer declines to renew an employee's fixed-term contract following alleged whistleblowing by the employee. To answer this question, we first conclude that a contract employee seeking a new term of employment should be treated the same as a prospective employee for purposes of the WPA. The question then becomes whether a spurned job applicant can bring a claim under the WPA. We hold that the WPA, by its express language, has no application in the hiring context. Thus, the WPA does not apply when an employer declines to renew a contract employee's contract.

Absent some express obligation stating otherwise, a contract employee has absolutely no claim to continued employment after his or her contract expires.[10] Rather, the employer must weigh the pros and cons of engaging the applicant for a new employment term, just as an employer must weigh the pros and cons of hiring a person in the first place. And as with any employment decision, the employer can make its decision for good reasons, bad reasons, or no reasons at all, as long as the reasons are not unlawful, such as those based on discrimination.[11] Therefore, in the context of the present case, no relevant difference exists between a new job applicant and a current contract employee seeking a new term of employment.

---

[10] *Bd of Regents of State Colleges v Roth*, 408 US 564, 578; 92 S Ct 2701; 33 L Ed 2d 548 (1972).

[11] See *Mich Employment Relations Comm v Reeths-Puffer Sch Dist*, 391 Mich 253, 259; 215 NW2d 672 (1974) ("[A]n employee may be terminated for a 'good reason, bad reason, or no reason at all'."), quoting *NLRB v Century Broadcasting Corp*, 419 F2d 771, 778 (CA 8, 1969).

We then ask whether a prospective employee who attempts to blow the whistle on a would-be employer may invoke the WPA's protections. When interpreting a statute, this Court must, of course, identify and give effect to the Legislature's intent. The most reliable indicator of the Legislature's intent is the language of the statute itself. If the statutory language clearly and unambiguously states the Legislature's intent, then further judicial construction is neither required nor permitted, and the statute must be enforced as written.[12]

The relevant provision of the WPA, MCL 15.362, states the following:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Drawing from the statutory language, this Court has identified three elements that a plaintiff must demonstrate to make out a prima facie case that the defendant employer has violated the WPA:

(1) The employee was engaged in one of the protected activities listed in the provision.[13]

---

[12] *Whitman*, 493 Mich at 311.

[13] The protected activities listed in the act consist of reporting or being about to report a violation of a law, regulation, or rule, or being requested by a public body to participate in an investigation, hearing, inquiry, or court action. MCL 15.362. See also *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998); *Brown v Detroit Mayor*, 478 Mich 589, 594; 734 NW2d 514 (2007).

(2) the employee was discharged, threatened, or otherwise discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment.[14]

---

[14] Many courts, including this one, have at times grouped the collection of retaliatory acts that an employer might take toward a whistleblower under the broader term "adverse employment actions." See, e.g., *Whitman*, 493 Mich at 313; cf. *Chandler*, 456 Mich at 399 (drawing the second element of a prima facie WPA claim directly from the statutory language). But the way that the term has obtained meaning resembles the telephone game in which a secret is passed from person to person until the original message becomes unrecognizable. The term "adverse employment action" was originally developed and defined in the context of federal antidiscrimination statutes to encompass the various ways that an employer might retaliate or discriminate against an employee on the basis of age, sex, or race. See *Crady v Liberty Nat'l Bank & Trust Co of Indiana*, 993 F2d 132, 136 (CA 7, 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). The term "adverse employment action" appeared in this Court's jurisprudence for the first time in an age discrimination case, *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997), though the statute at issue in that case, as here, did not contain the term. Michigan courts then adopted the federal definition of "adverse employment action" in the context of making out a prima facie case under Michigan's Civil Rights Act. *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 362-366; 597 NW2d 250 (1999). Finally, the term crept into WPA cases. See *Debano-Griffin v Lake Co*, 493 Mich 167, 175-176; 828 NW2d 634 (2013); *Brown v Detroit Mayor*, 271 Mich App 692, 706; 723 NW2d 464 (2006), aff'd in relevant part, 478 Mich 589 (2007).

While the term "adverse employment action" may be helpful shorthand for the different ways that an employer could retaliate or discriminate against an employee, this case illustrates how such haphazard, telephone-game jurisprudence can lead courts far afield of the statutory language. That is, despite courts' freewheeling transference of the term from one statute to another, the WPA actually prohibits *different* "adverse employment actions" than the federal and state antidiscrimination statutes. So we take this opportunity to return to the express language of the WPA when it comes to the necessary showing for a prima facie case under that statute. Put another way, a plaintiff's demonstration of some abstract "adverse employment action" as that term has developed in other lines of caselaw will not be sufficient. Rather, the plaintiff must demonstrate one of the specific adverse employment actions listed in the WPA.

(3) A causal connection exists between the employee's protected activity and the employer's act of discharging, threatening, or otherwise discriminating against the employee.[15]

Significantly, as gleaned from the WPA's express language, the statute only applies to individuals who currently have the status of an "employee."[16] The Legislature defined an "employee" in the WPA as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied."[17] Noticeably absent from the WPA's definition of "employee" is any reference to prospective employees or job applicants. And indeed, the actions prohibited under the WPA could only be taken against a current employee. Only an employee could be discharged and only an employee could be threatened or discriminated against regarding his or her compensation, terms, conditions, location, or privileges of employment. Thus, the WPA simply excludes job applicants and prospective employees from its protections.

---

[15] MCL 15.362 (stating that an employer may not take prohibited action against an employee "*because*" of an employee's engagement in a protected activity) (emphasis added). See *Chandler*, 456 Mich at 399; *Debano-Griffin v Lake Co*, 493 Mich at 175 (2013).

[16] We recognize that plaintiff was an employee at the time he engaged in protected activity. Significantly, however, plaintiff makes no claim that his employment contract was in any way breached or that he was subject to a specific adverse employment action enumerated by the WPA during his contract term. Rather, plaintiff maintains that because he engaged in protected activity during his contract term, he has a right under the WPA to renewal of his contract. For the reasons set forth in this opinion, we reject plaintiff's claim.

[17] MCL 15.361(a).

10

In this regard, the WPA stands in stark contrast to Michigan's Civil Rights Act (CRA). Whereas the WPA makes no mention of pre-employment conduct, the CRA refers to an employer's failure to hire or recruit someone:

> An employer shall not do any of the following:
>
> (a) *Fail or refuse to hire or recruit*, discharge, or otherwise discriminate against *an individual* with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.[18]

The same is true of the federal Age Discrimination in Employment Act (ADEA)[19] and Title VII of the federal Civil Rights Act (Title VII).[20] Each of these statutes provides protection during the recruitment and hiring process; the WPA does not. Moreover, whereas the WPA protects "employees," the CRA, the ADEA, and Title VII protect the broader class of "individuals" from prohibited employer actions.[21] Thus, when discussing the protections afforded prospective employees, any comparison to these antidiscrimination statutes offers little help.[22]

---

[18] MCL 37.2202(1) (emphasis added).

[19] 29 USC 623(a)(1) (stating that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age").

[20] 42 USC 2000e-2(a)(1) (stating that it shall be an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin").

[21] MCL 37.2202; 29 USC 623(a)(1); 42 USC 2000e-2(a)(1).

[22] This, of course, does not mean that courts interpreting the WPA should *never* look to the CRA or federal antidiscrimination statutes for help. But in doing so, courts must be cognizant of the textual differences that exist.

11

In light of this analysis, caselaw applying the antidiscrimination statutes to contract renewals offers no insight into how the WPA should operate in the same situation. For example, consider *Leibowitz v Cornell Univ*,[23] a case extensively relied on by Wurtz and the Court of Appeals majority, which involved a nontenured professor at Cornell.[24] The professor sued the school for violation of Title VII and the ADEA after it declined to renew her fixed-term contract.[25] The *Leibowitz* court held that "where an employee seeks renewal of an employment contract, non-renewal of an employment contract constitutes an adverse employment action for purposes of Title VII and the ADEA."[26] But any reliance on *Leibowitz* for its application in the WPA context ignores the logic that the court used to reach its conclusion. In fact, the court held that nonrenewal of a contract fell within the antidiscrimination statutes' reach *precisely because* the statutes protect new job applicants.[27] But the WPA has no application during the hiring process. The floor underlying the *Leibowitz* court's conclusion collapses when

---

[23] *Leibowitz v Cornell Univ*, 584 F3d 487 (CA 2, 2009).

[24] *Id*. at 492-493.

[25] *Id*. at 495.

[26] *Id*. at 501.

[27] *Id*. at 500-501 ("It is beyond cavil that employers subject to the strictures of the ADEA and Title VII may not discriminate on the basis of age or gender in deciding whether or not to hire prospective employees. . . . Were we to accept defendants' argument here, we would effectively rule that *current* employees seeking a renewal of an employment contract are not entitled to the same statutory protections under the discrimination laws as *prospective* employees. . . . An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA.").

attempting to apply *Leibowitz* to the WPA. While the ADEA and Title VII may apply in the context of a contract renewal, that fact has no bearing on the application of the WPA in the same situation.

This Court need not inquire why the Legislature chose to confine the WPA's protections by the bookends of employment while extending the CRA's protections to the hiring context. The Legislature elected to craft its legislation that way, and we decline to second-guess the wisdom of the Legislature's policy decisions.[28] Indeed, any number of policy justifications could be advanced for limiting the WPA's application to current employees.[29] The mere fact that the Legislature chose to extend the CRA to the hiring context is insufficient to extend the WPA that far too, particularly when the WPA's statutory language requires the opposite result.

---

[28] See *Petripren v Jaskowski*, 494 Mich 190, 212 n 50; 833 NW2d 247 (2013).

[29] For example, the Legislature might have considered the possibility of a situation like that which has arisen under the Energy Reorganization Act (ERA), 42 USC 5851, a federal whistleblowing statute that has been interpreted to protect prospective hires. A single litigant, Syed Hasan, has sued at least a dozen companies that refused to hire him. Hasan, who has raised nonmeritorious whistleblowing allegations in the past, methodically seeks employment and informs the prospective employers of his whistleblowing history. Then, when the companies decline to hire him, Hasan promptly brings an action for violation of the ERA's whistleblowing provisions. Despite his unmitigated waste of judicial resources all around the country, this Court has not turned up a single case in which Hasan prevailed on the merits. See, e.g., *Hasan v US Dep't of Labor*, 545 F3d 248 (CA 3, 2008); *Hasan v US Dep't of Labor*, 400 F3d 1001 (CA 7, 2005); *Hasan v US Dep't of Labor*, 298 F3d 914 (CA 10, 2002); *Hasan v US Dep't of Labor*, 301 F Appx 566 (CA 7, 2008); *Hasan v Secretary of Labor*, 90 F Appx 5, (CA 1, 2004); *Hasan v US Dep't of Labor*, 102 F Appx 341 (CA 4, 2004); *Hasan v US Dep't of Labor*, 107 F Appx 184 (CA 11, 2004).

Lest today's holding be misapplied, we find it necessary to mention several things that this opinion does not say. While we hold that the WPA does not apply to decisions regarding contract renewal, we emphasize that the WPA does protect employees working under fixed-term contracts from prohibited employer actions taken with respect to an employee's service under such a contract. Indeed, the WPA's definition of "employee" expressly denotes a person working "under a contract for hire." Thus, when an employer discharges, threatens, or discriminates against a contract employee serving under a fixed-term contract because the employee engaged in a protected activity, the WPA applies.

Today's holding also has no bearing on at-will employees. While an at-will employee cannot maintain any expectation of future employment, the employment continues indefinitely absent any action from the employer.[30] Thus, an at-will employee does not need to reapply for the job for the employment to continue beyond a certain date. Once hired, an at-will employee will not later find himself or herself in the same position as a new applicant. A current at-will employee therefore stands squarely within the WPA's protections.[31] An employee working under a fixed-term contract, on the other hand, essentially becomes a new applicant when seeking a new term of employment. In sum, we do not base our decision today on whether a person can maintain an expectation of future employment but merely on whether the person falls within the WPA's protections. At-will employees do; contract employees seeking a new term of employment do not.

---

[30] *McNeil v Charlevoix Co*, 484 Mich 69, 86; 772 NW2d 18 (2009).

[31] See *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695 n 2; 316 NW2d 710 (1982).

14

The WPA's language governs this case without any additional judicial interpretation. The WPA simply does not extend to the pre-employment context. Because we discern no legal difference between a contract employee seeking a new term of employment and a new applicant, the WPA provides no protection to a contract employee in that context. If a contract employee alleges only that the employer declined to renew the employee's contract, and not some action taken against the employee with respect to an employee's service under the contract, the WPA has no application.

## IV. APPLICATION

Wurtz cannot show any entitlement to relief under the WPA. Wurtz alleges that the District violated the WPA by deciding not to renew his contract. In other words, Wurtz only alleges that the District took some action against him in his capacity as an *applicant* for future employment. But as this opinion has shown, the WPA does not apply to job applicants, nor does it apply to contract employees seeking renewal of their contracts.[32] The trial court properly granted summary disposition in defendants' favor.

During Wurtz's ten years as an *employee*—when he enjoyed the protections of the WPA—he endured no action prohibited by the WPA. He was not discharged, threatened, or discriminated against regarding his compensation, terms, conditions, location, or privileges of employment. He served the District for the entire duration of his contract

---

[32] Wurtz's contract did not contain any renewal clause imposing some obligation or duty on the employer to act. Thus, we need not address the effect that such a clause would have on our analysis.

and received every cent and every benefit to which he was entitled.  Thus, the District did not engage in any action prohibited by the WPA.

Moreover, the circuit court did not prematurely grant summary disposition in defendants' favor.  Generally, a circuit court should not grant summary disposition unless no fair likelihood exists that additional discovery would reveal more support for the nonmoving party's position.  Wurtz argues that additional discovery would have yielded employment records showing that the District routinely renewed its employees' fixed-term contracts.  Accepting this as true, no additional discovery would change the outcome in this case.  Wurtz worked for the District for the entirety of his contract and suffered no adverse employment action in the context of that contract.  That the District may have renewed employees' contracts in the past does not transform the expiration of Wurtz's contract into a prohibited action.  No amount of additional discovery would have yielded support for Wurtz's position, and summary disposition was not premature.

During his time as an *employee*, Wurtz experienced no action prohibited by the WPA and therefore has no recourse under the statute.  As an *applicant* for future employment, Wurtz was not hired.  But the WPA does not cover prospective employees whom an employer declines to hire, so Wurtz cannot claim relief under the statute.

## V.  CONCLUSION

The WPA does not provide Wurtz any recourse.  The WPA does not apply to prospective employees and it does not apply to contract employees seeking renewal of their employment contract.  Wurtz's only allegation of a prohibited action occurred in the context of his application for future employment, so his claim fails as a matter of law.

16

Moreover, summary disposition was not premature because no amount of additional discovery would show that Wurtz came within the WPA's protections. Accordingly, we reverse the Court of Appeals' decision and remand this case to the circuit court for entry of summary disposition in defendants' favor.

> Brian K. Zahra
> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly
> Bridget M. McCormack
> David F. Viviano

CAVANAGH, J., concurred in the result.