# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN SMITH,

    Plaintiff-Appellant,

v

CITY OF FLINT,

    Defendant-Appellee.

FOR PUBLICATION
November 5, 2015
9:00 a.m.

No. 320437
Genesee Circuit Court
LC No. 13-100532-CZ

Before: FORT HOOD, P.J., and SAAD and RIORDAN, JJ.

SAAD, J.

Plaintiff appeals from the order that granted partial summary disposition to defendant.[1] Specifically, plaintiff challenges the trial court's grant of summary disposition under MCR 2.116(C)(8) to defendant on plaintiff's Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, claim. For the reasons provided below, we affirm.

## I. BASIC FACTS

Plaintiff, a police officer with the Flint Police Department, had been the president of the City of Flint Police Officers Union since approximately February 2011. As the union president, he worked from 8:00 a.m. until 4:00 p.m., handling all work-related grievances filed by Flint police officers against defendant. On April 24, 2012, Michael Brown, Flint's emergency manager, issued Order 18, which eliminated the position of full-time union president. However, even after the order was issued, plaintiff continued to act as union president for the remainder of 2012.

In November 2012, Flint voters passed a five-year, six-mill millage to collect funds for public safety. The amount of funds for the first year was projected to be $5.3 million. After the election, plaintiff publicly complained that the revenue from the millage was not being used for hiring as many new police officers as possible. On March 8, 2013, defendant's police chief informed plaintiff in writing that he was to be placed on road patrol beginning March 11, 2013.

---

[1] This Court initially declined to grant leave, but our Supreme Court remanded for consideration as on leave granted. *Smith v City of Flint*, 497 Mich 920 (2014).

Plaintiff asserted that defendant retaliated against him for publicly criticizing the misuse of the millage revenue by assigning him to patrol of Flint's north end, which he claimed was the most dangerous part of the city.

Plaintiff thereafter brought suit against defendant, which included, among other claims, a claim for retaliation in violation of the WPA. Defendant moved for summary disposition on plaintiff's WPA claim pursuant to MCR 2.116(C)(8), arguing that the change of plaintiff's assignment to the north end of Flint did not constitute an adverse employment action under the WPA. The trial court agreed and granted defendant's motion for summary disposition on plaintiff's WPA claim.

## II. STANDARDS OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recover. When deciding a motion brought under this section, a court considers only the pleadings. [*Id.* at 119-120 (citations omitted).]

Further, we review questions of statutory interpretation de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). "When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature." *Id*. "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Id*.

## III. ANALYSIS

The underlying purpose of the WPA is the protection of the public. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378; 563 NW2d 23 (1997). "The WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). "The statute meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Id.* at 631 (quotation marks and citations omitted). Additionally, "[t]he WPA is a remedial state and must be liberally construed to favor the persons that the Legislature intended to benefit." *Id*.

The relevant portion of the WPA provides the following:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a

violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

Thus, in order to establish a prima facie case under the WPA, a plaintiff must prove that "(1) plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) 'a causal connection exists between the protected activity' and the adverse employment action." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013), quoting *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998).

## A.  ADVERSE EMPLOYMENT ACTION

In its order, our Supreme Court directed us to specifically address whether plaintiff established a prima facie case with respect to the second element, i.e., whether the complaint alleged sufficient facts to show that defendant took an adverse employment action against plaintiff.

In interpreting this element, Michigan courts have long characterized the retaliatory actions that are prohibited under MCL 15.362 as "adverse employment actions." See *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251 n 14; 848 NW2d 121 (2014). And, consistent with that interpretation, Michigan courts typically state that a plaintiff must plead and be able to prove that he or she suffered an adverse employment action in order to establish a WPA claim. See, e.g., *Whitman*, 493 Mich at 313. "The term 'adverse employment action' was originally developed and defined in the context of federal antidiscrimination statutes to encompass the various ways that an employer might retaliate or discriminate against an employee on the basis of age, sex, or race." *Wurtz*, 495 Mich at 251 n 14.

The trial court relied on *Peña v Ingham Co Rd Comm*, 255 Mich App 299; 660 NW2d 351 (2003), which defined an adverse employment action "as an employment decision that is materially adverse in that it is more than a mere inconvenience or an alteration of job responsibilities." *Id.* at 311. The *Peña* Court explained that "there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions . . . are not controlling." *Id.*, quoting *Wilcoxon v Minn Mining & Mfg Co*, 235 Mich App 347, 364; 597 NW2d 250 (1999). The Court stated that a "typical" adverse employment action "takes the form of an ultimate employment decision, 'such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.' " *Peña*, 255 Mich App at 312, quoting *White v Burlington N & Santa Fe R Co*, 310 F3d 443, 450 (CA 6, 2002), vacated for en banc rehearing 321 F3d 1203 (CA 6, 2003). "In determining the existence of an adverse employment action, courts must keep in mind the fact that '[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.' " *Peña*, 255 Mich App at 312, quoting *Blackie v Maine*,

75 F3d 716, 725 (CA 1, 1996). Although *Peña* was decided in the context of a retaliation claim pursuant to the Michigan Civil Rights Act, this Court has applied the reasoning in the context of the WPA. See *Heckmann v Detroit Chief of Police*, 267 Mich App 480, 492; 705 NW2d 689 (2005), overruled in part on other grounds *Brown v Mayor of Detroit*, 478 Mich 589; 734 NW2d 514 (2007).

Plaintiff asserts that the federal law on which *Peña* relied has been overruled. We note that federal courts have rejected the interpretation that an adverse employment action must take the form of an "ultimate employment decision." In *White v Burlington N & Santa Fe R Co*, 364 F3d 789, 801-802 (CA 6, 2002), the Court of Appeals for the Sixth Circuit, sitting en banc, rejected the "ultimate employment decision" limitation imposed on retaliation claims. The United States Supreme Court affirmed that decision and explained that actionable retaliation was not properly limited to "ultimate employment decisions." *Burlington N & Santa Fe R Co v White*, 548 US 53, 67; 126 S Ct 2405; 165 L Ed 2d 345 (2006). The Supreme Court explained that the anti-retaliation provision of Title VII claims may include actions and harms occurring either in or outside the workplace, but any actions must be materially adverse to a reasonable employee or job applicant. *Id*. at 67-68.[2]

Consistent with the federal courts' determinations, our Supreme Court has also expressed an intention to move away from language that limits the construct of a retaliatory action in a way not prescribed by statute. In *Wurtz*, our Supreme Court recently rejected the assertion that a plaintiff may establish a WPA claim by showing that he or she suffered some abstract "adverse employment action." *Wurtz*, 495 Mich at 251 n 14. The Court explained:

> While the term "adverse employment action" may be helpful shorthand for the different ways that an employer could retaliate or discriminate against an employee, this case illustrates how such haphazard, telephone-game jurisprudence can lead courts far afield of the statutory language. That is, despite courts' freewheeling transference of the term from one statute to another, the WPA actually prohibits different "adverse employment actions" than the federal and state antidiscrimination statutes. So we take this opportunity to return to the express language of the WPA when it comes to the necessary showing for a prima facie case under that statute. Put another way, a plaintiff's demonstration of some abstract "adverse employment action" as that term has developed in other lines of caselaw will not be sufficient. Rather, the plaintiff must demonstrate one of the specific adverse employment actions listed in the WPA. [*Id*.]

Accordingly, in order to establish an adverse employment action under the WPA, a plaintiff has to show that he was discharged, threatened, or otherwise discriminated against, such that his *compensation, terms, conditions, location, or privileges of employment* were affected. *Id*. at 251. Moreover, in determining whether a retaliatory action provided for in the statute occurred, we

---

[2] "While Michigan courts are not bound by federal title VII precedent in interpreting Michigan Civil Rights Act cases, such precedent is highly persuasive." *Cole v Gen Motors Corp*, 236 Mich App 452, 456; 600 NW2d 421 (1999).

hold that the objective and material standard provided by *Peña* continues to apply. Namely, an adverse employment action (regarding that employee's compensation, terms, conditions, location, or privileges of employment) must be more than a mere inconvenience or an alteration of job responsibilities, and there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling. See *Peña*, 255 Mich App at 312.

Here, plaintiff has not alleged sufficient facts to show that he suffered an actual adverse employment action within 90 days of filing his complaint.[3] Plaintiff's removal as full-time union president and return to work as a patrol officer was accomplished by the emergency financial manager's order in April 2012, which was well over 90 days before plaintiff filed his complaint on May 31, 2013. In fact, the decision to return plaintiff to work as a police officer was made before plaintiff's statements complaining about the use of the millage revenue.

Further, plaintiff's subsequent assignment to patrol duty on the north end of Flint does not constitute an adverse employment action. While retaliation related to an employee's "location" is expressly covered under the WPA, we do not construe "location" under the statute to encompass the action here. Plaintiff's assignment to patrol areas of the city is more in the nature of "job duties" that fall squarely within the discretion of a police department's fundamental role in securing public safety. We discern the statute's reference to a change in location to be a significant, objective one, such as a move from one city to another or from one location to another of an employer with multiple offices. Here, the area where officers patrol *within the same city they were sworn to protect* concerns job assignments, not a matter of location. As a result, plaintiff's assignment to a particular patrol duty within the city of Flint, objectively, is simply not covered by the WPA.

In sum, under the facts as pled by plaintiff, defendant's alleged acts of retaliation do not constitute an adverse employment action under the WPA. Accordingly, summary disposition in defendant's favor is proper under MCR 2.116(C)(8). Although the trial court erroneously equated an "adverse employment action" with an "ultimate employment decision," we will not reverse when the court reaches the right result, albeit for the wrong reason. *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

## B. PROTECTED ACTIVITY

We also note that were we to hold that plaintiff pled sufficient facts to show that he suffered an adverse employment action under the WPA, summary disposition nonetheless would be appropriate because he failed to establish that he participated in any protected activities under the statute.

The WPA protects two types of whistleblowers. A "type 1 whistleblower" is "one who, on his own initiative, takes it upon himself to communicate the employer's wrongful conduct to a

---

[3] MCL 15.363(1) requires a plaintiff to bring a WPA claim "within 90 days after the occurrence of the alleged violation of the act."

public body in an attempt to bring the, as yet hidden, violation to light to remedy the situation or harm done by the violation." *Henry v Detroit*, 234 Mich App 405, 410; 594 NW2d 107 (1999). A "type 2 whistleblower" is one who participates "in a previously initiated investigation or hearing at the behest of a public body." *Id.*

Initially, we note that plaintiff does not allege any facts that would implicate that he was a type 2 whistleblower. While he merely reproduced in his complaint the keywords of the WPA that he "participated in an investigation and/or inquiry and/or hearing by a public body," plaintiff alleged zero facts in support of this conclusory assertion. Consequently, this unsupported assertion that he was a type 2 whistleblower is not sufficient to survive a motion for summary disposition. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 544; 730 NW2d 481 (2007) ("It is axiomatic that conclusory statements unsupported by factual allegations are insufficient to state a cause of action.").

Accordingly, if plaintiff is to prevail, he must allege facts to show that he qualified as a type 1 whistleblower, i.e., that he reported or was about to report a violation of the law to a public body. Here, plaintiff did not demonstrate that he engaged in any protected activity. First and foremost, plaintiff has not alleged what law or rule was violated when defendant chose to use the $5.3 million from the millage in the manner it did. See MCL 15.362 (stating that at the heart of any protected activity is a violation or a suspected violation of an established law or rule). What is clear is that plaintiff simply disagreed with the *policy decisions* that defendant made with respect to the funds. A person's mere disagreement with a governmental body's decisions does not mean that the body violated the law. Certainly there are countless examples of how government has made illogical or highly questionable decisions, but the lack of logic or wisdom in those decisions does not make the government's actions illegal. Moreover, we take judicial notice that the millage proposal in question sought the funds "for the sole purpose of providing police *and* fire protection." (Emphasis added.) Nowhere did it state that it was to dedicate all of the raised funds for the police department, and it also did not state that all of the funds would be used for hiring new people. Clearly, there are other non-personnel expenses that are necessary for both the police and fire departments, such that the entirety of the funds could not be used for new hires.

Consequently, aside from failing to allege sufficient facts to show that he suffered an adverse employment action under the WPA, plaintiff also failed to allege sufficient facts to show that he was engaged in any protected activity.[4] Thus, dismissal of his WPA claim was appropriate under MCR 2.116(C)(8), and the fact that this element was not specifically challenged at the trial court is of no consequence. See MCR 2.116(I)(1) ("If the pleadings show

---

[4] To be clear, our holding is limited to plaintiff's WPA claim. While objecting to a government's policy decisions does not implicate the WPA because the complained-of conduct is not illegal, such objection may implicate an employee's right to be protected from retaliation on First Amendment grounds. See *Pickering v Bd of Ed*, 391 US 563; 88 S Ct 1731; 20 L Ed 2d 811 (1968). However, plaintiff never made a First Amendment claim, and the issue is not before us.

that a party is entitled to judgment as a matter of law, . . . the court shall render judgment without delay").

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Henry William Saad
/s/ Michael J. Riordan