# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH CUEVAS,

       Plaintiff/Counter-Defendant-
       Appellee,

v

THE BOARD OF HOSPITAL MANAGERS OF
HURLEY MEDICAL CENTER, also known as
HURLEY MEDICAL CENTER, ANNETTE
NAPIER, and MELISSA BACHMAN,

       Defendants/Counter-Plaintiffs-
       Appellants.

UNPUBLISHED
January 12, 2017

No. 329589; 329660
Genesee Circuit Court
LC No. 14-103863-CZ

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

In Docket No. 329589, defendants/counter-plaintiffs,[1] the Board of Hospital Managers of Hurley Medical Center (also known as Hurley Medical Center) (hereinafter referred to individually as Hurley Hospital), and its individual employees, Annette Napier and Melissa Bachman, appeal as of right the trial court's order denying their motion for summary disposition of the intentional infliction of emotional distress claim brought by plaintiff/counter-defendant,[2] Elizabeth Cuevas, with regard to Napier and Bachman. In Docket No. 329660, defendants appeal by leave granted the same order denying their motion for summary disposition on plaintiff's claim asserted under the Whistleblowers' Protection Act (WPA), MCL 15.361 et seq.[3] We reverse and remand to the trial court.

---

[1] Throughout this opinion, defendants/counter-plaintiffs will be referred to as defendants.

[2] Throughout this opinion, plaintiff/counter-defendant will be referred to as plaintiff.

[3] *Cuevas v Bd of Hosp Managers of Hurley Med Ctr*, unpublished order of the Court of Appeals, entered March 25, 2016 (Docket No. 329660).

The grant or denial of a motion for summary disposition is reviewed de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). As discussed in *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010) (citations and footnotes omitted):

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate.

In turn, as discussed in *In re Casey Estate*, 306 Mich App 252, 263; 856 NW2d 556 (2014) (citations and quotation marks omitted):

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. This Court reviews a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Review is limited to the evidence that was presented to the . . . court at the time the motion was decided. Summary disposition under MCR 2.116(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the nonmoving party, leaves open an issue upon which reasonable minds could differ.

The trial court did not indicate which subrule it relied on in denying summary disposition to defendants. On the basis of the pleadings and the arguments in the trial court, we review the denial of summary disposition to the individual defendants regarding plaintiff's intentional infliction of emotional distress claim in accordance with MCR 2.116(C)(7), while the denial of defendants' motion for summary disposition regarding the WPA violation claims is reviewed in accordance with MCR 2.116(C)(10).

Defendants contend that the trial court erred in failing to dismiss plaintiff's claim of intentional infliction of emotional distress against the individual defendants based on governmental immunity. We agree.

"Generally, the governmental immunity act provides broad immunity from tort liability to governmental agencies, officials, or employees who exercise or discharge a governmental function." *Pew v Mich State Univ*, 307 Mich App 328, 332; 859 NW2d 246 (2014) (footnote omitted), citing MCL 691.1401 *et seq.*; *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984), superseded by statute on other grounds as stated in *Peters v Bay Fresh Start, Inc*, 161 Mich App 491, 498; 411 NW2d 463 (1987); *Jones v Bitner*, 300 Mich

App 65, 74-75; 832 NW2d 426 (2013). Specifically, MCL 691.1407(2) provides, in relevant part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Our Supreme Court summarized the test for individual governmental immunity in *Odom v Wayne Co*, 482 Mich 459, 479-480; 760 NW2d 217 (2008), when, as in the circumstances of this case, a plaintiff has pleaded an intentional tort. Specifically, governmental immunity is applicable to an individual defendant if:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial. [*Id.* at 480.]

Initially, we observe that of the many allegations made by plaintiff with regard to her claim of intentional infliction of emotional distress against the individual defendants, all of which we have reviewed and considered, those that fail to identify actions by those individuals are not supportive of her claims. For example, plaintiff cites to her omission from an email lunch invitation that was sent by another coworker. Plaintiff also complains of her coworker Cynthia Webb's behavior and attitude. However, there is nothing in the record to confirm that the actions of the coworker that sent the email lunch invitation or Webb's behavior were in fact attributable to the individual defendants.

This leaves for consideration under the claim of intentional infliction of emotional distress plaintiff's contentions that Bachman and Napier, individually or conspiring with one another: (a) denied her on one identified occasion the opportunity to alter her work schedule, (b) verbally instructed her to follow the dress code and sent an email to all employees as a reminder of the necessity to comply with the dress code, (c) reprimanded plaintiff on one occasion for rude

-3-

and discourteous behavior to her supervisor, (d) lowered the scores on plaintiff's performance evaluation, and (e) relocated plaintiff's office.

Initially, given the supervisory and managerial roles of Bachman and Napier, there can be no serious dispute that the actions complained of "were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority[.]" *Id.* In dispute are the good-faith requirement and the discretionary or ministerial nature of the actions relied on for the claim. "The good-faith element . . . is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id.* at 481-482 (footnote and citations omitted). Plaintiff attributes malicious intent to Bachman and Napier, but provides no evidence to sustain her assertions other than the fact that the complained of actions occurred after the discovery of the document scanning problem.

Contrary to plaintiff's arguments, legitimate work-based reasons were identified for the complained of actions. For example, the decision to not honor plaintiff's request for a schedule change was explained by plaintiff's status as the only physician's assistant in the clinic and the necessity of her availability for patient care. Further, the email pertaining to the dress code was sent to all staff without specific reference to plaintiff. Although plaintiff denied engaging in any rude or discourteous behavior to Bachman justifying a reprimand, other evidence in the record verified the verbal exchange leading to the disciplinary measure. Similarly, the lowered scores on plaintiff's performance evaluation were approved by Basim Towfiq, M.D., as her clinical supervisor, and were premised on concerns regarding plaintiff's interactions with staff and patients and her failure to follow directives from Towfiq. The exchange of offices was also necessary given the miniscule space occupied by Bachman, the practicality of placing the clinic supervisor and medical supervisor in proximity to each other and the need for Bachman to have a private space to meet with staff. Although plaintiff found the space she was moved to less desirable, it does not appear from the record that it was less functional or interfered with the performance of her job duties. Plaintiff's subjective belief, without more, failed to "create a justiciable question of fact with regard to whether defendant[s] acted in good faith[.]" *Oliver v Smith*, 290 Mich App 678, 689; 810 NW2d 57 (2010). We conclude that a rational trier of fact could not find that defendants' behavior lacked good faith or was malicious.

Turning to the third element to support a claim of governmental immunity, this Court has held that "[d]iscretionary-decisional acts are those which involve significant decision-making that entails personal deliberation, decision, and judgment. Ministerial-operational acts involve the execution or implementation of a decision and entail only minor decision-making." *Oliver*, 290 Mich App at 689-690 (citations and quotation marks omitted). Of the situations and events complained of by plaintiff, all those relevant to the actions of Bachman and Napier were discretionary in nature. The assignment of office space, performance evaluation rating determinations, employee scheduling and discipline clearly comprise decisions that require "personal deliberation, decision and judgment." *Id.* As such, the trial court erred in failing to dismiss the intentional infliction of emotional distress claims brought by plaintiff against the individual defendants premised on governmental immunity.

Plaintiff's claim of intentional infliction of emotional distress also cannot be sustained against these defendants simply because the behavior complained of does not meet the legal

-4-

elements to sustain the claim. As discussed by this Court in *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (citations, footnotes and quotation marks omitted):

> To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery.

"The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!" *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (citations and quotation marks omitted). "[L]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Lucas v Awaad*, 299 Mich App 345, 359; 830 NW2d 141 (2013) (quotation marks and citation omitted). None of plaintiff's allegations of wrongdoing by defendants meet the "extreme and outrageous" requirement necessary to sustain her claim. The actions complained of occur routinely in a workplace environment. They are not unusual or unexpected within an employment situation, and do not exceed the bounds of decency. While plaintiff was upset by the various events, the actions complained of do not rise to the level necessary to sustain a claim for intentional infliction of emotional distress.

In support of her claim, plaintiff also refers to the "special relationship" of the parties and cites *Margita v Diamond Mtg Co*, 159 Mich App 181; 406 NW2d 268 (1987), to assert that "[t]he extreme and outrageous character of the conduct may arise from the position of the actor or a relationship to the distressed party." *Id.* at 189 (citation omitted). Although Bachman and Napier were in positions of authority over plaintiff, this did not transform their managerial or administrative actions into extreme and outrageous behavior. In *Margita*, the plaintiffs were being harassed for a two-year period by a debt collection agency, in pursuit of collection of an imagined debt, with the ability to initiate foreclosure proceedings and permanently affect the plaintiffs' "credit rating and future borrowing ability." *Id.* at 190. In that situation, the Court determined that whether the defendant's behavior was extreme and outrageous comprised a question of fact for the jury. *Id.* In contrast, the circumstances alleged by plaintiff in this case are not comparable in terms of frequency, severity or character. As noted previously, the context of the alleged actions herein does not serve to enhance plaintiff's claim of harassment to a level sufficient to meet the requirements for a claim of intentional infliction of emotional distress.

Next, defendants assert that the trial court erred in declining to grant summary disposition in their favor on plaintiff's claim of a violation of the WPA. We agree.

The WPA, MCL 15.362, states:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

"The elements of a cause of action under the WPA are (1) the plaintiff was engaged in a protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Truel v City of Dearborn*, 291 Mich App 125, 138; 804 NW2d 744 (2010) (citation omitted). Three types of protected activity have been identified: "(1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation." *Ernsting v Ave Maria College*, 274 Mich App 506, 510; 736 NW2d 574 (2007).

At the outset, plaintiff has failed to demonstrate that she engaged in a protected activity to establish the first element for a prima facie case of retaliation under the WPA. The report of "a violation or a suspected violation of law or regulation or rule promulgated pursuant to [the] law of this state" comprises a protected activity pursuant to the WPA. MCL 15.362. Throughout the lower court proceedings, plaintiff failed to identify a law, regulation or rule "of this state" to support her claim. Rather, plaintiff complained of the mishandling or failure to comply with an internal operating procedure for the scanning of documents by Hurley Hospital. Further, a review of the record confirms that a dispute exists regarding whether plaintiff is actually the individual that raised concerns about the scanning delay. Specifically, the record evidence confirmed that Bachman, rather than plaintiff, discovered the problem, reported it and had devised a solution before plaintiff became aware or involved, thus diminishing plaintiff's self-characterization as a "whistleblower."

In response to the motion for summary disposition, plaintiff alleged that her reporting encompassed a violation of MCL 333.20176a, which states in relevant part:

(1) A health facility or agency shall not discharge or discipline, threaten to discharge or discipline, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee or an individual acting on behalf of the employee does either or both of the following:

(a) In good faith reports or intends to report, verbally or in writing, the malpractice of a health professional or a violation of this article, article 7, article 8, or article 15 or a rule promulgated under this article, article 7, article 8, or article 15. [Footnotes and citations omitted.]

-6-

Although plaintiff expressed concern that the document scanning backlog could negatively affect patient health care, she did not allege malpractice by any practitioner on the basis of the lack of availability of the unscanned records. In the majority of instances, Towfiq opined that the records comprised merely verification of previously determined diagnoses or were irrelevant to the course of treatment prescribed. Testimony was elicited that when reports or documents were not found, individual practitioners would obtain copies through contacting the service provider for a duplicate. Towfiq specifically denied that any case or claim of malpractice arose because of the delay in scanning the documents. As such, plaintiff's assertion that her WPA violation claim was premised on MCL 333.20176a(1)(a) is unpersuasive.

Further, plaintiff's implication that medical malpractice could result at some point in the future due to the failure to timely scan the documents is unavailing. Our Supreme Court has recently explained:

> The reference in MCL 15.362 to "a violation or a suspected violation of a law" plainly envisions an act or conduct that has actually occurred or is ongoing. A common dictionary defines "violation" in part as "the act of violating: the state of being violated[.]" This definition contemplates an existing act that has occurred or is ongoing. That is, "a violation or a suspected violation" refers to an existing violation. The provision must therefore be read in the context of some conduct or act that has already occurred or is occurring, and not some conduct or act that may or may not occur. MCL 15.362 contains no language indicating that future, planned, or anticipated acts amounting to a violation or a suspected violation of a law are included within the scope of the WPA. Consequently, a stated intention to commit an act amounting to a violation of a law in the future does not constitute "a violation or a suspected violation of a law" for purposes of MCL 15.362 as a matter of law. [*Pace v Edel-Harrelson*, 499 Mich 1, 7-8; 878 NW2d 784 (2016) (citations and footnote omitted).]

In addition, plaintiff has failed to demonstrate that she was the victim of an adverse employment action as contemplated by the statutory provision. Specifically:

> Michigan courts typically state that a plaintiff must plead and be able to prove that he or she suffered an adverse employment action in order to establish a WPA claim. "The term 'adverse employment action' was originally developed and defined in the context of federal antidiscrimination statutes to encompass the various ways that an employer might retaliate or discriminate against an employee on the basis of age, sex, or race."

> The trial court relied on [the definition of] "an adverse employment action as an employment decision that is materially adverse in that it is more than a mere inconvenience or an alteration of job responsibilities." "[T]here must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions . . . are not controlling." [A] "typical" adverse employment action "takes the form of an ultimate employment decision, such as 'a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices that might be unique to a particular situation.' " "In determining the existence of an adverse employment action, courts must keep in mind the fact that '[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.' " [*Smith v City of Flint*, 313 Mich App 141, 147-148; 883 NW2d 543 (2015) (citations omitted).]

It is undisputed that plaintiff was not terminated by defendants but rather resigned her employment while on an extended medical leave. She was not demoted. Plaintiff did not suffer or receive an alteration in position, title, compensation, or benefits other than any typically associated with the medical leave of absence she requested and was granted.

Rather, plaintiff contends that because of the ongoing "tension" at work that she experienced or perceived, she was constructively discharged from her job. In accordance with caselaw:

> A constructive discharge is established where an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign. Where reasonable persons could reach different conclusions regarding whether these elements are established, the issue becomes a question of fact for the jury and not one properly decided by the trial court. [*Vagts v Perry Drug Stores, Inc*, 204 Mich App 481, 487-488; 516 NW2d 102 (1994) (citation and quotation marks omitted).]

Based on plaintiff's allegations, a reasonable person would not have felt compelled to resign their position premised on the actions described. As such, her subjective complaints are legally insufficient to establish constructive discharge. See *Vagts*, 204 Mich App at 487. Defendants averred that they fully anticipated plaintiff to return to work, in the same position, at the completion of her medical leave of absence and indicated that she would have been eligible for an open position even after her resignation. It is recognized that "an employee who leaves his employment when he has been presented with legitimate options for continued employment with that employer . . . is precluded from claiming constructive discharge." *LaPointe v United Autoworkers Local 600*, 103 F3d 485, 489 (CA 6, 1996).[4]

Reversed and remanded to the trial court for further action consistent with this opinion.

---

[4] Given our conclusion with regard to the first two elements of a claim under the WPA, we need not reach the third element of causation.

Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.  We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto