# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC A. KRAWCZYK,

        Plaintiff-Appellee,

v

CITY OF DEARBORN, RONALD HADDAD,
and WILLIAM J. LEAVENS,

        Defendants-Appellants.

UNPUBLISHED
April 2, 2015

No. 317074
Wayne Circuit Court
LC No. 12-008744-CD

---

ERIC A. KRAWCZYK,

        Plaintiff-Appellee,

v

CITY OF DEARBORN, RONALD HADDAD,
and WILLIAM J. LEAVENS,

        Defendants-Appellants.

No. 317101
Wayne Circuit Court
LC No. 12-008744-CD

---

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendants appeal the trial court's denial of their motion for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). For the reasons stated below, we reverse and remand.[1]

## I. FACTS AND PROCEDURAL HISTORY

---

[1] Specifically, in Docket No. 317101, defendants appeal the portion of the trial court's order denying their motion on the basis of governmental immunity. In Docket No. 317074, defendants appeal the remaining portions of the trial court's decision. Our Court consolidated the appeals for administrative reasons. *Krawczyk v City of Dearborn*, unpublished order of the Court of Appeals, entered January 10, 2014 (Docket No. 317074).

-1-

Plaintiff is a former sergeant for the city of Dearborn police department, and also served as an officer in the local policemen's union. His brother-in-law and longtime friend, defendant William Leavens, worked with plaintiff as a lieutenant in the police department. However, plaintiff and Leavens' friendship deteriorated in 2011, and they were no longer friends by January 2012. Plaintiff believed that Leavens, who was married to plaintiff's sister, was cheating on his wife by engaging in multiple extra-marital affairs.

According to Leavens, soon after their falling out, plaintiff, in his capacity as an officer in the local union, decided to withdraw his support for the creation of a captain's position in the Dearborn police department. Leavens suspected plaintiff's decision was motivated by plaintiff's anger at him, as Leavens believed he would have been promoted to captain had the position been created. Leavens supposedly considered filing a complaint with union officials about what he viewed as plaintiff's unethical handling of the matter. To dissuade Leavens from complaining to the union, plaintiff allegedly threatened to tell his sister about Leaven's supposed affairs through use of department records.

In March 2012, plaintiff met with representatives of the Human Resources Department regarding the investigation of a complaint filed against Leavens by another officer. During that meeting, plaintiff mentioned that Leavens had physically threatened him and engaged in "timecard fraud." The Human Resources staff told plaintiff that he had to separately submit his own allegations against Leavens in order for the city to treat the allegations as a formal complaint. On March 26, 2012, plaintiff sent an email message to the Human Resources Department, which alleged that Leavens: (1) engaged in "time fraud" by conducting extra-marital affairs during working hours; and (2) physically threatened plaintiff.

In April 2012, Leavens told Police Chief Ronald Haddad of plaintiff's attempt to extort him by telling his wife about his extra-marital affairs, and alleged that plaintiff had taken department records on his hours and telephone use to support plaintiff's claim that he engaged in "timecard fraud." Haddad suspended plaintiff from duty on April 4, 2012 with pay, and referred Leavens' complaint to the Michigan State Police (MSP) for investigation. The MSP interviewed Leavens during the investigation, and forwarded their findings to the Wayne County Prosecutor's Office, which declined to pursue the matter.

After the conclusion of the investigation, plaintiff was invited to return to work, and granted family/medical leave (at his request) to recover from the medical and mental side effects plaintiff allegedly suffered during the suspension. After the family/medical leave ran out, plaintiff was allowed to use paid sick days to continue his recovery. He eventually returned to work, but claims that he continued to experience stress and anxiety because of his suspension.[2]

---

[2] Plaintiff was suspended once again a year later—this time without pay—because of his arrest for drunk driving. Specifically, plaintiff was involved in three accidents (two involving other vehicles, one involving a tree), and fled the scene of two of those accidents. The police department terminated plaintiff in July 2013 after he pled no contest to the crimes of being a "superdrunk" driver and leaving the scene of an accident.

Plaintiff filed this lawsuit in June 2012, and alleged that: (1) defendants violated the Whistleblower's Protection Act ("WPA"), MCL 15.361 *et seq.*, when they subjected him to an investigation after he filed a complaint against Leavens; and (2) Leavens tortiously interfered with his employment relationship by making supposedly defamatory statements to Haddad about plaintiff's threats of extortion.[3]  Defendants moved for summary disposition of plaintiff's action under MCR 2.116(C)(7), (8), and (10), asserting, among other things, that they possessed governmental immunity under the GTLA, and that plaintiff had provided no evidentiary basis to sustain any of his claims.

The trial court denied defendants' motions.  Defendants appealed the case to our Court, and make the same arguments as they did during the motion proceedings.

## II.  STANDARD OF REVIEW

A trial court's decision on whether to grant or deny summary disposition is reviewed de novo.  *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).  Because defendants relied on documentary evidence in support of their motion for summary disposition, and plaintiff submitted documentary evidence in opposition to the motion, the trial court appropriately reviewed the motion under MCR 2.116(C)(10).  *Cuddington v United Health Servs*, *Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).  A reviewing court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted by the parties "in the light most favorable to the party opposing the motion." *Id*.  "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.  A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III.  ANALYSIS

### A.  WHISTLEBLOWER PROTECTION ACT

MCL 15.362, part of Michigan's Whistleblower's Protection Act (WPA), states that:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of

---

[3] In his complaint, plaintiff also alleged that defendants violated the Elliott-Larsen Civil Rights Act ("CRA"), MCL 37.2101 *et seq.*, by discriminating against him on basis of his obesity. However, plaintiff states in his brief that he has waived the CRA claim on appeal.  Accordingly, we remand for entry of an order of judgment for defendants on this issue.

the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.[4] [Footnote added.]

To prevail, a plaintiff who alleges that his employer committed a WPA violation must demonstrate that:

(1) [He] was engaged in one of the protected activities listed in the provision.

(2) [He] was discharged, threatened, or otherwise discriminated against regarding . . . compensation, terms, conditions, location, or privileges of employment.

(3) A causal connection exists between [his] protected activity and [his] employer's act of discharging, threatening, or otherwise discriminating against [him]. [*Wurtz v Beecher Metro Dist*, 495 Mich 242, 251–252; 848 NW2d 121 (2014) (footnotes omitted).]

"Causal connection" between a plaintiff's "protected activity" and his "employer's act of discharging, threatening, or otherwise discriminating against" him can be shown through direct evidence or indirect evidence. See *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). "Direct evidence is that which, if believed, *requires* the conclusion that the plaintiff's protected activity [under the WPA] was at least a motivating factor in the employer's actions." *Shaw v Ecorse*, 283 Mich App 1, 14; 770 NW2d 31 (2009) (emphasis added). If a plaintiff provides the court with direct evidence of retaliation for his WPA-protected activities, "[he] can go forward and prove [his employer's retaliation] in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001).

If a plaintiff cannot show direct evidence of a "causal connection" between his "protected activity" and his employer's "act of discharging, threatening, or otherwise discriminating against" him, he must show *indirect* evidence of a causal connection between his "protected activity" and his employer's "act of discharging, threatening, or otherwise discriminating against" him. Indirect evidence is evidence that allows a fact finder to "*infer* that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin*, 493 Mich at 176 (emphasis in original).

A plaintiff who relies on indirect evidence to demonstrate a causal connection between his protected activity and his employer's act of discharging, threatening, or otherwise discriminating against him merely demonstrates a "rebuttable prima facie case . . . that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin*, 493 Mich at 176. The burden

---

[4] At the outset, we note that plaintiff, as a matter of law, may not bring a WPA claim against Leavens, because Leavens is not an "employer" under the statute. See MCL 15.361(b).

of proof then shifts to the employer to demonstrate "a legitimate reason for its action." *Id*. If the employer is able to do so, and the plaintiff fails to rebut the employer's legitimate reason for its conduct, the employer is entitled to summary disposition. *Id*.

Here, plaintiff has failed to submit any direct or indirect evidence that his complaint against Leavens caused the Dearborn police department to refer the investigation of his behavior to the MSP. The only "evidence" of such a connection is plaintiff's own deposition, which reiterates plaintiff's *belief* that his complaint and the MSP investigation are linked. This accusation is not proof—it is indeed something that requires proof. And, in any event, were we to assume plaintiff has shown indirect evidence that his complaint about Leavens caused the MSP investigation, defendants had a "legitimate reason" to initiate the investigation and refer it to the MSP. Leavens complained about plaintiff's behavior to Haddad, and Haddad forwarded the complaint to the MSP because the complaint involved an internal dispute, which would be best investigated by an outside entity. Plaintiff does not offer convincing evidence to rebut defendant's "legitimate reason" for initiating the investigation and referring it to the MSP. *Debano-Griffin*, 493 Mich at 176.

Accordingly, the trial court should have granted defendants' request for summary disposition as to plaintiff's WPA claim.[5]

## B. TORTIOUS INTERFERENCE

A party that claims tortious interference with a business relationship must demonstrate that the tortious interference complained of "induce[d] or cause[d]" the breach or termination of the business relationship. *PT Today, Inc v Commissioner of Office of Financial and Ins Servs*, 270 Mich App 110, 148; 715 NW2d 398 (2006).

Here, plaintiff cannot show that Leavens' supposed interference with his employment relationship "induce[d] or cause[d]" the breach or termination of his employment relationship. Leavens' actions led to the MSP investigation—which did not induce or cause plaintiff's termination. In fact, plaintiff was reinstated after the conclusion of the MSP investigation. Plaintiff's ultimate termination was because of his own actions—his "superdrunk" driving arrest and decision to flee the scene of two accidents. The trial court therefore wrongly denied Leavens' request for summary disposition as to plaintiff's tortious interference claim against him.[6]

---

[5] We reject plaintiff's argument that summary disposition is premature because discovery was not completed. Plaintiff did not comply with MCR 2.116(H) by submitting an affidavit showing the need for additional discovery. *Coblentz v City of Novi,* 475 Mich 558, 570-571; 719 NW2d 73 (2006). Further, in light of this decision, it is unnecessary to address defendants' argument that plaintiff's WPA claim against Leavens was not timely filed under MCL 15.363(1).

[6] Because plaintiff's tortious interference claim against Leavens fails as a matter of law, we need not address whether Leavens may claim governmental immunity.

## IV. RESPONSE TO THE PARTIAL CONCURRENCE AND PARTIAL DISSENT

To put this case in perspective, plaintiff claims that the city of Dearborn, through its police department, violated the WPA because it suspended him with pay (and subsequently reinstated him) after he complained to the city's Human Resources department about actions purportedly committed by his brother-in-law—in other words, actions committed by an individual, not actions committed by the police department, city, or anyone with employment authority over plaintiff. Stated another way, plaintiff's suit is a poor effort to use the WPA to superimpose a family dispute onto the Dearborn Police Department, and force city taxpayers to compensate him for a private, unseemly disagreement he had with his brother-in-law.

The "retaliation" of which plaintiff complains, and which the concurrence/dissent believes constitutes a valid claim under the WPA—plaintiff's suspension, with pay—is not actually evidence of retaliation on behalf of the police department. In fact, it is evidence that the Department and Haddad behaved quite properly and prudently in such a private disagreement between two employees: upon allegations made against plaintiff by another officer and family member, the Department wisely chose to remove investigation of this potentially acrimonious family dispute to an impartial authority, the Michigan State Police, for resolution. And, after the conclusion of the investigation, which did not result in prosecution, the Department reinstated plaintiff. This is anything but "retaliation" under the WPA—if the Department had wished to retaliate against plaintiff it would have terminated him, not suspended him with pay and reinstated him after the conclusion of an outside investigation. Again, plaintiff's termination was due entirely to his own actions—his "superdrunk" driving and decision to leave the scene of two accidents. These events have nothing to do with plaintiff's WPA claim, which is that his suspension, with pay, constitutes "retaliation" for complaints he made about his brother-in-law.

Though plaintiff never makes such an argument, the concurrence/dissent nonetheless asserts that the Dearborn Police Department's actions toward him constituted "disparate treatment." This analysis is mistaken, because plaintiff and Leavens are not similarly situated for the following reasons. First, the allegations that each leveled against one another are of a fundamentally different nature. Plaintiff's accusations involved threats of physical violence and "timecard fraud"—routine complaints the Department would be expected to handle internally. By contrast, Leavens' accusations involved extortion and blackmail—far more serious allegations which would require an outside investigation.

Second, plaintiff and Leavens made their complaints to different individuals and agencies within the city administration. Plaintiff submitted a complaint about Leavens' alleged behavior to the city Human Resources department, while Leavens complained about plaintiff's alleged behavior to police chief Haddad. Haddad's decision to suspend plaintiff does not constitute disparate treatment of plaintiff vis-a-vis Leavens, because plaintiff never attempted to voice his concerns to Haddad.[7] Indeed, Haddad properly responded to Leavens' complaint, and the

---

[7] Plaintiff's claim might have possessed more validity had both he and Leavens complained to Haddad about each other's behavior. In such an instance, if Haddad acted on Leavens' complaints—by suspending plaintiff and referring the investigation to the MSP—and not acted

Human Resources department properly responded to plaintiff's complaint, both within their proper function.

In sum, plaintiff's attempt to recast this routine and appropriate handling of a family dispute that bled into the workplace as a violation of the WPA is completely unavailing. For this reason, and the reasons mentioned in the body of the opinion, defendants are entitled to summary disposition under MCR 2.116(C)(10), and the matter is remanded to the trial court for entry of an order of dismissal.

## V. CONCLUSION

Accordingly, we reverse the trial court's improper denial of defendants' request for summary disposition under MCR 2.116(C)(10), and remand for entry of an order granting defendants summary disposition as to plaintiff's claims. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Henry William Saad

---

on plaintiff's complaints in a similar fashion, plaintiff might have been able to claim that the Police Department treated him in a disparate manner.