*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONTEZ HILL,

      Plaintiff-Appellee,

v

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

      Defendant,

and

WILLIAM RICHARD CRISMAN, CAPACITY
TRANSPORT, LLC, and LAM LEASING,
LLC,

      Defendants-Appellants.

UNPUBLISHED
May 26, 2022

No. 355602
Wayne Circuit Court
LC No. 19-003617-NI

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

In this third-party no-fault action, defendants, William Crisman (Crisman), Capacity Transportation, LLC (Capacity), and LAM Leasing, LLC (LAM), appeal by leave granted[1] the trial court's order denying in part their motions for summary disposition. We reverse and remand for entry of an order granting defendants' motions for summary disposition in their entirety.

## I. BACKGROUND

The underlying facts are not largely in dispute. The deposition testimony of plaintiff, Montez Hill, and Crisman is generally consistent. Video from Crisman's dashboard camera

---

[1] *Hill v Nationwide Mut Fire Ins Co,* unpublished order of the Court of Appeals, entered May 6, 2021 (Docket No. 355602).

captured the entire accident as it unfolded and corroborates Hill and Crisman's deposition testimony.

This case arises out of an automobile accident that occurred on January 9, 2019, at approximately 9:45 a.m. On that morning, Hill and Crisman were traveling westbound on I-96 in Wayne County, during a snowstorm. Hill was driving a Mercury Marquis, and Crisman was operating a loaded semi-tractor trailer in the course of his employment with Capacity. Crisman was traveling in the far right lane of the three-lane highway. Hill, driving in the middle lane, approached and passed Crisman on the left. Then, as both vehicles approached a slight curve in the highway, and the distance between them grew, Hill lost control of his vehicle and spun out. Hill's vehicle spun into the far left lane where it struck the concrete center barrier. During this time, Crisman continued to travel in the far right lane. After Hill's vehicle struck the center barrier, it briefly disappeared from view in a cloud of snow, then became visible as it was propelled, in reverse, across the three-lane highway, perpendicular to the direction of travel. Two seconds later, Crisman's truck collided with the driver's side of Hill's vehicle when it entered Crisman's lane. The total time between the start of Hill's spinout and the collision was 11 seconds.

On March 14, 2019, Hill filed this action against defendants, alleging negligence by Crisman in the operation of the semi-tractor trailer, negligent hiring, and liability under the owner's liability statute, MCL 257.401, contained within the Michigan Vehicle Code, MCL 257.1 *et seq*. At the close of discovery, defendants moved for summary disposition, under MCR 2.116(C)(10), as to all of Hill's claims.

On November 9, 2020, the trial court granted in part and denied in part defendants' motions. The theories of liability were narrowed by the court and the parties to: Crisman's comparative negligence, negligent hiring and retention, and owner's liability. The court found that questions of fact existed with respect to the comparative fault of each of the drivers. Regarding negligent hiring and retention, the court found that because LAM did not hire Crisman or entrust the vehicle to him, it was entitled to summary disposition of this claim. Regarding Capacity, however, the court denied summary disposition, finding that a question of fact existed with respect to whether Capacity negligently hired and retained Crisman. On the theory of ownership liability, the court granted summary disposition to Capacity because it was not the owner of the semi-truck. After the court concluded as a matter of law that LAM was the owner of the truck, it considered LAM's separate motion for summary disposition based on application of the federal Graves Amendment, 49 USC 30106. The court then found that a question of fact existed regarding whether LAM was in the business of leasing motor vehicles. The court found that any discussion regarding piercing the corporate veil would be premature absent a judgment, but did query whether LAM was a leasing company or simply set up for Capacity's tax and liability purposes. Accordingly, the court entered an order granting in part and denying in part defendants' motions for summary disposition consistent with its oral rulings.

This Court granted defendants' application for leave to appeal the trial court's order.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014). A motion

under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). A motion under MCR 2.116(C)(10) should be granted only when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

"The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Constr*, Inc, 295 Mich App 684, 693; 818 NW2d 410 (2012). The court must consider all of the admissible evidence in a light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). However, the party opposing summary disposition under MCR 2.116(C)(10) "may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Oliver v Smith*, 269 Mich App 560, 564; 715 NW2d 314 (2006) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

## III. LAW AND ANALYSIS

Defendants contest the trial court's ruling that a question of fact existed regarding the comparative fault of Hill and Crisman. We agree. Because no reasonable juror could find that Hill was less than 50% at fault, the trial court erred when it denied defendants' motion for summary disposition. The submitted evidence indicates that Hill's actions were the primary, if not sole, cause of the accident and that Crisman bears little fault, if any. This is particularly true when the Court considers the sudden-emergency doctrine.

### A. COMPARATIVE FAULT

The no-fault insurance act, MCL 500.3101 *et seq.*, places certain limits on tort liability for injuries sustained in motor vehicle accidents. *McCormick v Carrier,* 487 Mich 180, 189; 795 NW2d 517 (2010). Pursuant to MCL 500.3135(1), a person remains subject to tort liability for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. However, a party is not allowed to recover damages if they are found to be more than 50% at fault. Specifically, MCL 500.3135(2)(b) provides: "Damages must be assessed on the basis of comparative fault, except damages must not be assessed in favor of a party who is more than 50% at fault."

It is undisputed that Hill was an inexperienced driver. Although 30 years old, he had only had a driver's license for a few years, he did not own a car, and he typically used the bus, friends and family, or private transportation services for his transportation needs. On January 9, 2019, Hill either borrowed or took without permission an acquaintance's vehicle.

In addition to being an inexperienced driver, the record also demonstrates that on January 9, 2019, Hill was an irresponsible driver. Hill admitted that when he entered the highway on January 9, 2019, the road conditions "seemed icy." Despite the obviously hazardous conditions,

Hill drove above the posted speed limit. Hill's expert accident reconstructionist, Marc Edgcombe, concluded that Hill was operating his vehicle between 73 and 76 mph prior to spinning out. Shortly after passing Crisman on the left, Hill lost control of his vehicle. The undisputed evidence established that after encountering admittedly icy conditions, Hill's vehicle first swerved to the left, then to the right, and then back to the left. Edgcombe testified that these maneuvers were the result of Hill over-correcting, a response the expert explained was typical of an average driver. Then, according to Hill's expert, after Hill's vehicle rotated 180 degrees and "side-slapped" the center concrete barrier, it was propelled in reverse. Edgcombe testified that Hill's resultant course of travel, which was across all three lanes perpendicular to the direction of travel and into Crisman's lane, was again the result of "driver input."

Edgcombe conceded that Hill's inexperience, his driving in excess of the posted speed limit, driving too fast for the conditions, and over-correcting when he initially lost control of his vehicle all contributed to the accident. Edgcombe testified that he would not have taken issue with a police officer citing Hill for driving too fast for the conditions. Ultimately, Edgcombe agreed that had Hill maintained control of his vehicle, the accident would not have occurred.

By contrast, the unrefuted evidence established that Crisman was operating his vehicle at approximately 55 mph, well below the posted speed limit, when Hill approached him on the left. The testimony further established that at the point at which Hill began to lose control of his vehicle, Crisman promptly reacted. Hill's expert concluded that Crisman engaged the engine brake "very soon after" Hill began to lose control of his vehicle. According to Hill's expert, this resulted in Crisman further reducing his speed to 40 mph. Crisman maintained his course of travel in the far right lane, which was the lane at the greatest distance from Hill. Then, when Hill's vehicle unexpectedly reversed into Crisman's lane of travel, Crisman engaged the service brake. Hill's expert agreed that this was a reasonable action under the circumstances.

Notwithstanding the foregoing, Hill argues that had Crisman reacted differently, the accident could have been avoided. Hill's expert opined that when Crisman initially observed Hill begin to lose control of his vehicle, had he used the service brake instead of engine breaking, he could have brought his semi-tractor trailer to a stop four feet short of where the impact ultimately occurred. Even assuming that this opinion is credible, in order to survive defendants' motion for summary disposition, Hill was required to present evidence indicating that Crisman was more at fault than Hill as required by MCL 500.3101(2)(b). The evidence did not give rise to a question of fact in this regard. Because no reasonable juror could conclude that Hill was less than 50% at fault for the accident, defendants were entitled to summary disposition.

B. SUDDEN-EMERGENCY DOCTRINE

Any negligence attributable to Crisman would be excused by application of the sudden-emergency doctrine. The sudden-emergency doctrine applies "when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making." *Vander Laan v Miedema,* 385 Mich 226, 231; 188 NW2d 564 (1971); see also *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 622-623; 739 NW2d 132 (2007). The sudden emergency must be totally unexpected. *See Vander Laan*, 385 Mich at 231-232. "[I]t is essential that the potential peril had not been in clear view for any significant length of time . . . ." *Id.* at 232. The doctrine is a judicially-created principle which provides:

> One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. [*Vsetula v Whitmyer,* 187 Mich App 675, 680-681; 468 NW2d 53 (1991), quoting *Socony Vacuum Oil Co v Marvin,* 313 Mich 528, 546; 21 NW2d 841 (1946).]

The sudden-emergency doctrine is essentially an extension of the "reasonably prudent person" standard, with the question being whether the defendant acted as a reasonably prudent person when facing the emergency, considering the circumstances of the accident. *White*, 275 Mich App at 622-623.

Here, Crisman was faced with a sudden emergency not of his own making. Hill lost control of his vehicle and then exacerbated the circumstances by over-correcting. Crisman responded immediately by reducing his speed through engine breaking and maintaining his course of travel. When Hill's vehicle struck the center concrete barrier, Crisman was in the farthest lane away from the hazard that Hill created. But two seconds before the collision, Hill's vehicle propelled across three lanes, into Crisman's lane of travel. At that point, Crisman activated the service brake, but was unable to avoid impact. None of these facts are in dispute. No reasonable juror could fail to conclude that Crisman was faced with a sudden emergency.

Hill accepts the proposition that when he suddenly entered Crisman's lane, Crisman was presented with a sudden emergency. However, he asserts that the sudden emergency was of Crisman's own making because he failed to engage the service brake and, instead, elected to engine break, when he first saw Hill losing control of his vehicle. According to Hill, the sudden emergency presented two seconds before impact was created by Crisman's own actions. Hill argues that under these circumstances, the sudden-emergency doctrine does not apply. We disagree.

Hill's argument is based on a misunderstanding of the circumstances that give rise to a sudden emergency. "To come within the purview of [the sudden-emergency doctrine] the circumstances attending the accident must present a situation that is unusual or unsuspected." *Vander Laan,* 385 Mich at 231 (quotation marks omitted). The unusual or unsuspected events that created a sudden emergency were Hill's sudden loss of control of his vehicle, which caused the vehicle to strike the center concrete barrier and then travel across three lanes of traffic into Crisman's lane. Hill faults Crisman for failing to engage the service brake when he first saw Hill lose control of his vehicle, but that decision involved Crisman's response to the emergent situation suddenly created by Hill's loss of control, and a person faced with a sudden emergency "is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." *Vsetula,* 187 Mich App at 680-681. There is no evidence that Crisman did anything to cause Hill to lose control of his vehicle, or did anything that contributed to Hill's vehicle striking the center concrete barrier and then being propelled across three lanes of traffic into Crisman's lane. On the contrary, t

Hill's position is premised on the assumption that when he initially lost control of his vehicle, Crisman was not faced with a sudden emergency. This position is contrary to the opinion of Hill's own expert witness. Edgcombe testified:

> *Q*. Going off of that, when the Mercury first loses control, what makes it a hazard at that point?
>
> *A*. Well, we have a, we have, obviously, diminished weather conditions on the roadway. We have a vehicle that's lost control on the roadway. It wasn't hit by another vehicle. There wasn't any massive wind gust that we know of that would have caused that, so there's not really external force that caused that. So the assumption can be easily and quickly made by the average driver, that the roadway must be slippery. That's going to be your normal assumption. So in that, the driver, the truck driver, Mr. Crisman, is now breaking, because he sees this loss of control. It's a hazard. I would consider it more of an indirect hazard. The vehicle is not coming at his truck It's not approaching his truck. It's still a general roadway hazard, because he doesn't know what this car is going to do. He doesn't know where it's going to go. He doesn't know if it will, in fact, hit a wall and come back in the roadway, you know. . . .

Earlier in his testimony, Edgcombe again acknowledged that when Hill began to lose control of his vehicle, this created a sudden hazardous situation for Crisman:

> *As a tractor trailer driver when you see the vehicle losing control, I mean, just the understanding that vehicles can, for lack of a better term, do anything in a crash situation. They can go anywhere, just from a layman's terms.* The best thing to do in that case is give that vehicle space, and the only way to do that is, steer away from it. If you're on a limited access road, that's not a very good option. Or you can brake, decrease your speed to give that vehicle that's still traveling ahead of [you], you know, more distance, more space, so that whatever happens— basically, you arrive at that location later. And then, whatever happens, you can, you can, then give yourself more time to assess that situation and how it's progressing and make your own judgments as to how you're going to avoid that crash.

Further, Edgcombe's opinion that Crisman should have engaged the service brake when he first saw Hill out of control is a tacit acknowledgment that a sudden emergency existed. Hill's expert asserts that had the service brake been engaged, Crisman would have brought the vehicle to a stop 4 feet from the ultimate point of impact. That Hill would advocate for a semi-tractor to come abruptly to a complete stop, on an expressway, during a winter snow storm, if there was not a sudden and emergent need to do so, supports the conclusion that there was a sudden emergency. The undisputed and unbroken chain of events established that Crisman was faced with a sudden emergency. Viewing the evidence in the light most favorable to Hill, reasonable minds could not differ in this regard. Hill's suggestion to the contrary is not supported by the evidence. Whether the Court views the onset of the sudden emergency as 11 seconds before impact, when Hill first began to spin out, or 2 seconds before impact, when Hill jolted backward across the highway into

Crisman's lane, the conclusion is the same: a sudden emergency existed, and Crisman acted prudently.

In sum, considering the undisputed evidence, no reasonable juror could find that Crisman was more at fault than Hill, a showing that is required by MCL 500.3135(2)(b) for Hill to prevail. To the extent that Crisman bore any fault for the accident, there is no basis for concluding that he was more than 50% at fault. Moreover, any fault attributable to Crisman would be excused by the fact that he was faced with a sudden emergency not of his own making. Because there are no material questions of fact in this regard, the trial court erred when it denied defendants' motion for summary disposition with respect to Hill's negligence claim.

Finally, by extension, summary disposition related to Capacity and LAM is also appropriate. All of Hill's theories of liability against Capacity and LAM require a showing that Crisman negligently operated his motor vehicle.[2] We have concluded that no negligence can be attributable to Crisman. Therefore, summary disposition on all of Hill's claims against defendants is appropriate.

## IV. CONCLUSION

We reverse and remand for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood

---

[2] Under a theory of negligent hiring and retention, an employer may be held directly liable for its employee's tortious or illegal conduct when it knew or should have known of the employee's propensities. *Millross v Plum Hollow Golf Club,* 429 Mich 178, 196-197; 413 NW2d 17 (1987). Inherent in this theory of liability is a finding of tortious or illegal conduct on the part of the employee. Likewise, the owner's liability statute, MCL 257.401, imposes liability on the owner of a vehicle for its negligent operation.